FILED
RICHARD W. NAGEL
CLERK OF COURT

2018 JAN 23 PM 4:42

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Latesha Brittmon,

    Plaintiff,

    v.

Upreach, LLC, *et al.*,

    Defendants.

Case No. 2:17-cv-219

Judge Michael H. Watson
Magistrate Judge Vascura

## OPINION AND ORDER

Plaintiff Latesha Brittmon ("Plaintiff"), individually and on behalf of all similarly-situated individuals, brings claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and various Ohio laws against Defendants Upreach, LLC ("Upreach"), Melissa Gourley ("Gourley"), and Beth Hunter ("Hunter") (collectively, "Defendants") to recover unpaid overtime wages. Before the Court is Plaintiff's Motion for Conditional Certification and Court-Supervised Notice to Potential Opt-In Plaintiffs, ECF No. 4; Defendants' 12(b)(6) Motion to Dismiss, ECF No. 6; Plaintiff's Motion for Leave to File a Sur-Reply *Instanter*, ECF No. 12; and Plaintiff's Motion to Toll the Statute of Limitations for Potential Opt-In Plaintiffs, ECF No. 14. The latter three motions have been fully briefed and are ripe for review. For the reasons explained below, the Court **DENIES** Defendants' Motion to Dismiss, **DENIES** Plaintiff's Motion for Leave to File a Sur-Reply, and **DENIES** Plaintiff's Motion to Toll the Statute of Limitations.

Additionally, the Court **GRANTS in part and DENIES in part** Plaintiff's Motion for Conditional Certification and Court-Supervised Notice.[1]

## I.     BACKGROUND

Upreach is a home care staffing agency that employs direct care workers for the developmentally disabled in need of assistance. Gourley is Chief Executive Officer, and Gourley and Hunter are co-owners, of Upreach.

Plaintiff was jointly employed by Defendants as a Support Specialist from approximately February 2015 to approximately July 2016. As a Support Specialist, Plaintiff provided companionship services, domestic services, home care, and other in-home services for individuals with developmental disabilities. Plaintiff alleges that she and similarly situated employees regularly worked more than forty hours per workweek but that, from approximately January 1, 2015, to October 13, 2015, they were not paid one and one-half times their regular rate for each hour worked over forty.

Plaintiff seeks remuneration for unpaid overtime wages on behalf of the following proposed class of FLSA opt-in plaintiffs and Rule 23 putative class members:

> All current and former employees of Defendants who have worked as direct support professionals, support associates, caregivers, home health aides, or other employees who provided companionship services, domestic services, home care, and/or other in-home services, and who worked over 40 hours in any workweek

---

[1] As more fully explained below, Defendants assert, in a footnote to their Motion to Dismiss, that they would not respond to Plaintiff's Motion for Conditional Certification because it was untimely filed. Mot. Dismiss 2 n.1, ECF No. 6.

beginning January 1, 2015 through October 13, 2015, and were not paid time and a half for the hours they worked over 40.

Compl. ¶¶ 31, 37, ECF No. 1. Plaintiff alleges that the proposed class includes upwards of around 250 similarly situated individuals who worked as, for example, direct support professionals, support specialists, caregivers, home health aides, and others who provided companionship services, domestic services, home care, and other in-home services for Defendants during the relevant time period. *Id.* at ¶ 32.

What spawned this action, and many others like it, is a change to Department of Labor ("DOL") regulations defining the categories of employees exempted from the FLSA's overtime protections. Subject to specific exceptions, the FLSA generally requires covered employers to pay overtime compensation in the amount of 150% of the employee's regular pay rate for all hours worked in excess of forty hours per week. 29 U.S.C. §§ 206(a), 207(a). In 1974, the FLSA was amended to exempt "domestic service" employees (that is, employees "provid[ing] companionship services for individuals who (because of age or infirmity) are unable to care for themselves") from the FLSA's overtime requirement. 29 U.S.C. § 213(a)(15). The next year, the DOL adopted implementing regulations that, in relevant part, included individuals employed by third parties in its category of exempted employees. 29 C.F.R. § 552.109(a), (c) (2014).

In 2013, the DOL reversed course, adopting a new rule (the "Final Rule" or "Rule") that brought domestic service employees of third-parties within the protections of the FLSA. 29 C.F.R. § 552.6 (2016). The Final Rule was scheduled to become effective on January 1, 2015. *Id.*; *see also* 80 Fed. Reg. 65646 (Oct. 27, 2015).

Prior to its effective date, however, a group of trade associations representing third-party employers of home care workers filed a lawsuit challenging the regulation under the Administrative Procedure Act. In December 2014, the D.C. District Court vacated the Final Rule based on its finding that the Rule was an unreasonable interpretation of federal law and was arbitrary and capricious. *Home Care Ass'n of Am. v. Weil*, 76 F. Supp. 3d 138, 147–48 (D.D.C. 2014). The DOL appealed, and on August 21, 2015, the D.C. Circuit Court reversed the district court's ruling and vacatur of the regulation. *Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084, 1097 (D.C. Cir. 2015). Thereafter, the DOL issued guidance stating that it would not institute enforcement proceedings for violations of the Final Rule until thirty days after the Court of Appeals issued its mandate. 80 Fed. Reg. 55029 (Sept. 14, 2015). The Court of Appeals issued its mandate on October 13, 2015, and the DOL issued another guidance indicating it would not bring enforcement actions for violations of the Rule until November 12, 2015. 80 Fed. Reg. 65646, 65647 (Oct. 27, 2015). The effect of these court decisions on the Final Rule's effective date is at the heart of this lawsuit.

## II.    DEFENDANTS' MOTION TO DISMISS

### A. Standard of Review

A claim survives a motion to dismiss pursuant to Rule 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal citations omitted).

A court must "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). In doing so, however, plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007). "[A] naked assertion . . . gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility . . . ." *Twombly*, 550 U.S. at 557.

"[S]omething beyond the mere possibility of [relief] must be alleged . . . ." *Id.* at 557–58 (internal citations omitted).

## B. Analysis

Defendants' Motion to Dismiss hinges on one crucial unsettled question of law: the effective date of the DOL's Final Rule. Plaintiff alleges that Defendants are liable to their domestic services employees for all unpaid overtime beginning January 1, 2015, the Rule's scheduled date of effectiveness. *See* 29 C.F.R. § 552.6. Defendants, on the other hand, contend that the Final Rule was not effective until at least October 13, 2015, the date of the D.C. Circuit Court's mandate.

No circuit court has ruled on the Final Rule's effective date, and the district courts to have done so have reached conflicting conclusions. The analysis begins with the general principle that judicial decisions, as opposed to statutes and regulations, apply retroactively. *See Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993). According to that principle, when a court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the court's] announcement of the rule." *Id.*

The Undersigned finds that a straightforward application of the *Harper* retroactivity rule to this case compels the conclusion that the Final Rule became effective as of January 1, 2015. "[W]hen the D.C. Circuit held that the third-party

exemption was valid, this holding applied to *all* prospective defendants for any period after the rule went into effect" on January 1, 2015. *Green v. Humana at Home, Inc.*, 2017 U.S. Dist. LEXIS 162961, at *6 (S.D.N.Y. Sept. 29, 2017). Therefore, Plaintiff may recover any unpaid overtime wages from January 1, 2015, and on.

This holding is in accord with that of a majority of district-court cases that have ruled on this issue. *See Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2017 WL 749196 (S.D. Ohio Feb. 27, 2017) (Black, J.); *Richert v. LaBelle HomeHealth Care Serv. LLC*, No. 2:16-cv-437, 2017 WL 4349084 (S.D. Ohio Sept. 29, 2017) (Graham, J.); *Kinkead v. Humana, Inc.*, 206 F. Supp. 3d 751 (D. Conn. 2016); *Lewis-Ramsey v. Evangelical Lutheran Good Samaritan Soc'y*, 215 F. Supp. 3d 805 (S.D. Iowa 2016); *Cummings v. Bost, Inc.*, 218 F. Supp. 3d 978 (W.D. Ark. 2016); *Collins v. DKL Ventures, LLC*, 215 F. Supp. 3d 1059 (D. Colo. 2016); *Guerrero v. Moral Home Services, Inc.*, 247 F. Supp. 3d 1288 (S.D. Fla. 2017); *Hypolite v. Health Care Servs. of New York Inc.*, 256 F. Supp. 3d 485 (S.D.N.Y. 2017); *Mayhew v. Loved Ones in Home Care, LLC*, No. 2:17-cv-03844, 2017 WL 5983153 (S.D.W. Va. Dec. 1, 2017); *Evans v. Caregivers, Inc.*, No. 3:17-cv-0402, 2017 WL 2212977 (M.D. Tenn. May 19, 2017); *de Carrasco v. Life Care Servs., Inc.*, No. 17-cv-5617 (KBF), 2017 WL 6403521 (S.D.N.Y. Dec. 15, 2017); *Green v. Humana at Home, Inc.*, No. 16-cv-7586, 2017 U.S. Dist. LEXIS 162961 (S.D.N.Y. Sept. 29, 2017). *But see Bangoy v. Total Homecare Sols., LLC*, No. 1:15-cv-573, 2015 WL 12672727 (S.D. Ohio Dec. 21, 2015) (Beckwith,

J.) (finding the Final Rule became effective on at least October 13, 2015, if not November 12, 2015); *Sanchez v. Caregivers Staffing Servs., Inc.*, No. 1:15-cv-01579, 2017 WL 380912 (E.D. Va. Jan. 26, 2017) (Final Rule became effective October 13, 2015); *Lee v. Caregivers for Indep., LLC*, No. 1:16-cv-946, 2017 WL 2666413 (S.D. Ohio June 21, 2017) (Barrett, J.), *appeal dismissed*, No. 17-3738, 2017 WL 4621715 (6th Cir. Sept. 12, 2017) (Final Rule became effective November 12, 2015).

Defendants, however, in reliance on *MCI Telecommunications Corp. v. GTE Northwest, Inc.*, 41 F. Supp. 2d 1157 (D. Ore 1999) (Mag. J.), argue that *Harper* does not apply here because the D.C. District Court vacated the Final Rule *prior to the date it went into effect*. The *MCI* court was tasked with determining the effective date of specific FCC regulations, which, like the Final Rule here, had been temporarily vacated and subsequently reinstated through successive judicial opinions ruling on the regulations' legality. *Id.* at 1161–62. Specifically, the Eight Circuit Court of Appeals had ruled that the FCC regulations at issue were invalid because the FCC lacked jurisdiction to promulgate them. *Id.* at 1161. During the pendency of the case, the Eighth Circuit had also issued a stay of the regulations' effective date. *Id.* at 1162. The Supreme Court subsequently reversed the Eighth Circuit's decision on the merits and reinstated the regulations. *Id.*

Later, in *MCI*, the District Court of Oregon had to determine whether the reinstated FCC regulations applied to conduct occurring between the Eighth

Circuit and Supreme Court decisions. The *MCI* court "perceive[d] a crucial distinction between applying a new interpretation of a law that admittedly was in effect during the relevant time period, versus applying a substantive regulation that never was in effect to begin with." *Id.* at 1163. Ultimately, it determined that the regulations were not effective until after the Supreme Court reinstated them; a contrary finding, the court explained, would require treating the Eighth Circuit's stay and vacatur as if they "had never occurred and the FCC regulations were continuously in effect." *Id.*

In the opinion of the Undersigned, however, the distinction observed by the *MCI* court between judicial decisions reversing a rule's vacatur and those reversing course on a prior, contrary interpretation of a rule in fact makes no difference to the applicability of the *Harper* retroactivity rule. Practically speaking, adoption of the legal fiction that a former judicial decision was never really the law in the first place is precisely what the *Harper* rule requires. For this reason, several other courts have expressly rejected the *MCI* rationale, finding instead that a court decision that an agency had authority to promulgate a rule means that the agency "always had such [authority] and that the rule[] appl[ies] as of the effective date originally scheduled." *GTE S., Inc. v. Morrison*, 199 F. 3d 733, 740 (4th Cir.1999); *see also U.S. West Commc'ns, Inc. v. Jennings*, 304 F. 3d 950, 957(9th Cir. 2002) ("[W]ith respect to the previously vacated [FCC] rules, the Supreme Court's determination that they are valid means that we

should apply those rules to all interconnection agreements arbitrated under the Act, including agreements arbitrated before the rules were reinstated.").

Therefore, "[t]his case presents nothing out of the ordinary when it comes to the authority of a Court of Appeals to render null and void decisions of the district court with which it disagrees." *Lewis-Ramsey*, 215 F. Supp. 3d at 810. Indeed, the rationale behind the rule is to "prohibit the erection of selective temporal barriers to the application of federal law" that could otherwise "permit the substantive law to shift and spring according to the particular equities of individual parties' claims of actual reliance on an old rule and of harm from a retroactive application of the new rule." *Harper*, 509 U.S. at 97 (internal quotation marks and citations omitted). To prevent the selective application of federal law, the Supreme Court has expressly rejected the reliance rationale that underlies the *MCI* court's decision. *See id.*; *see also Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758–59 (1995) (reiterating that a party's reliance on a former rule is not sufficient justification for the non-retroactive application of a judicial decision); *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 536 (1991) (plurality opinion) (acknowledging that retroactive application of judicial decisions "has been attacked for its failure to take account of reliance on cases subsequently abandoned"). Similarly, here, Defendants' protestations that retroactive application of the D.C. Circuit Court's ruling in *Weil* "could greatly impact the economic stability of employers nationwide," Reply 8, ECF No. 11, does not—and must not—change the Court's determination as to *Weil*'s

retroactive effect. *See also Kinkead*, 206 F. Supp. 3d at 755 ("Although defendants might have hoped that the district court's decision would spare them from having to pay overtime, they were doubtlessly aware of a likelihood that the D.C. Circuit would do just what appellate courts often do—reverse the decision of a district court."); *see also Collins*, 215 F. Supp. 3d at 1065 (stating the Supreme Court precedent "makes it unambiguously clear that this Court cannot deem the D.C. Circuit's decision in *Weil* to operate retroactively in some respects," *i.e.* in its conclusion that the Final Rule was a valid exercise of the DOL's power, "yet treat that decision as affecting [certain third-party employers] only prospectively," *i.e.* only those third-party employers employing domestic services employees after October 13, 2015).

Still, Defendants contend that the DOL's decision not to enforce the Final Rule until November 12, 2015, thirty days after the D.C. Court of Appeals' mandate, is evidence that demonstrates the Final Rule's effective date is at least October 13, 2015, if not November 12, 2015. But Defendants read too much into the DOL's non-enforcement policy. At bottom, the DOL's policy not to *enforce* the Rule did nothing to *modify* the Rule itself or its effective date. If evidence were needed to support this position, it would come from the DOL's own prior guidance on the effective date of the Final Rule. In October 2014, the DOL issued guidance explaining that it would defer enforcement of the Final Rule until July 1, 2015, even though its effective date would remain January 1, 2015. 79 Fed. Reg. 60974 (Oct. 9, 2014). Then, after July 1, 2015, and until December

31, 2015, the DOL stated it would exercise prosecutorial discretion and determine on a case-by-case basis whether an employer's violation of the Final Rule warranted enforcement action by the DOL. *Id.* This guidance thus demonstrates that the DOL's non-enforcement decisions have no bearing on the effectiveness of the Final Rule. Indeed, to hold that the DOL's Final Rule became effective on any other date than that set by the DOL would be to usurp the rule-making authority of the DOL—one of the very concerns the *Harper* retroactivity rule was designed to address. *See Harper*, 509 U.S. at 95 ("[T]he nature of judicial review strips [the court] of the quintessentially legislative prerogative to make rules of law retroactive or prospective as [it] see[s] fit." (quoting *Griffith v. Kentucky*, 479 U.S. 314, 713 (1993) (internal quotation marks omitted)); *see also Kinkead*, 206 F. Supp. 3d at 752 (denying the third-party employer's motion for "dismissal on a theory that would negate the agency's choice of an effective date and preclude retroactive application of the D.C. Circuit's decision"). Instead, the retroactivity rule requires that all third-party employers be subject to the Final Rule beginning not just after October 13, 2015, or November 12, 2015 (depending on the date deemed equitable by a court), but on January 1, 2015—the effective date of the Final Rule that has always (according to *Weil*) been validly in force.

For these reasons, the Court finds that the Final Rule's effective date is January 1, 2015. Accordingly, Defendants' Motion to Dismiss is **DENIED**.

## III.    PLAINTIFF'S MOTION FOR LEAVE TO FILE A SUR-REPLY

Plaintiff also moved for leave to file a sur-reply to Defendants' Reply in Support of its Motion to Dismiss Plaintiff's Complaint in order to respond to arguments that Plaintiff contends Defendants made for the first time in their Reply. Mot. Sur-Reply, ECF No. 12. Because the Court denies Defendants' Motion to Dismiss, it **DENIES** Plaintiff's Motion for Leave to File a Sur-Reply as moot.

## IV.    PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND COURT-SUPERVISED NOTICE TO POTENTIAL OPT-IN PLAINTIFFS

### A. Legal Standard

The FLSA authorizes employees to bring collective actions against employers to recover unpaid overtime wages provided two conditions are met: (1) the employees are "similarly situated" and (2) all plaintiffs provide written consent to become a party and such consent is filed with the court. 29 U.S.C. § 216(b). Courts within the Sixth Circuit generally apply a two-step procedure for determining whether an FLSA case should proceed as a collective action. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546–47 (6th Cir. 2006).

The first step, commonly referred to as "conditional certification," takes place prior to the completion of discovery and requires the plaintiff to make an initial showing that the employees in the proposed class are "similarly situated." *Id.* at 546 (quoting 29 U.S.C. § 216(b)). At this first stage, "conditional certification may be given along with judicial authorization to notify similarly

situated employees of the action," which allows plaintiffs to opt-in to the lawsuit. *Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017) (citing *Comer*, 454 F.3d at 546).

At the conditional certification stage, a "plaintiff must only 'make a modest factual showing' that [the plaintiff] is similarly situated to the other employees he is seeking to notify." *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 764 (N.D. Ohio 2015) (quoting *Comer*, 454 F.3d at 546–47); *see also Myers v. Marietta Mem. Hosp.*, 201 F. Supp. 3d 884, 890 (S.D. Ohio 2016). The standard employed during this initial stage of the litigation is "fairly lenient . . . and typically results in 'conditional certification' of a representative class." *Myers*, 201 F. Supp. 3d at 890 (quoting *Comer*, 454 F.3d at 547). Whether plaintiffs are similarly situated depends on a number of factors, including the "factual and employment settings of the individual[ ] plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, [and] the degree of fairness and procedural impact of certifying the action as a collective action." *O'Brien v. Ed Donnelly Enter., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009) (citation omitted), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016). A plaintiff need not show a single FLSA-violating policy but rather can demonstrate that the claims of the named plaintiffs and the putative class are unified by "common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* Plaintiffs are only required to show that their position is "similar, not identical, to the positions held

by the putative class members." *Lewis*, 789 F. Supp. 2d at 867 (quoting *Pritchard*, 210 F.R.D. at 595).

During the conditional certification phase, "a court 'does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility.'" *Myers*, 201 F. Supp. 3d at 890 (quoting *Waggoner*, 110 F. Supp. 3d at 765). Courts have instead considered "whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; whether evidence of a widespread discriminatory plan was submitted, and whether as a matter of sound class management, a manageable class exists." *Fairfax v. Hogan Transp. Equip., Inc.*, No. 2:16-cv-680, 2017 WL 4349035, at *2 (S.D. Ohio Sep. 29, 2017) (quoting *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 868 (S.D. Ohio 2011)). Still, conditional certification is "by no means final." *Comer*, 454 F.3d at 546 (quoting *Pritchard v. Dent Wizard Int'l*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)).

If the Court determines that the potential plaintiffs are similarly situated, "[t]he Court must then determine that the proposed notice is "timely, accurate, and informative" as to properly notify the proposed class. *Green v. Platinum Restaurants Mid-america, LLC*, No. 3:14-cv-439-GNS, 2015 WL 6454856, at *2 (W.D. Ky. Oct. 26, 2015) (quoting *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 166 (1989)).

The second step of an FLSA collective action follows discovery and receipt of all opt-in forms from putative plaintiffs. *Comer*, 454 F.3d at 547. At this time,

the Court will examine the factual basis of Plaintiffs' proposed class more closely and will apply a stricter standard in evaluating whether Plaintiffs are "similarly situated." *Id.* (quoting *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000)). If the Court determines at this second phase that the Plaintiffs are not similarly situated, it will de-certify the class, dismiss the opt-in plaintiffs without prejudice, and proceed with the lawsuit on the named plaintiffs' individual claims. *Smith v. Lowe's Home Ctrs.*, 236 F.R.D. 354, 357 (S.D. Ohio 2006).

## B. Analysis

### 1. Conditional Certification

This matter is before the Court on the first step—conditional certification. Plaintiff seeks to conditionally certify all current and former domestic service employees of Defendants who worked over forty hours in any workweek from January 1, 2015, through October 13, 2015, and were not paid at a rate of 150% their normal hourly rate for the hours they worked over forty in a workweek. Mot. 1–2, ECF No. 4.

As previously noted, Defendants declined to respond to Plaintiff's motion, asserting that it was filed prior to the parties' Rule 26(f) conference in violation of the Southern District of Ohio Civil Rule 23.3. Mot. Dismiss 2 n.1, ECF No. 6. Defendants misread that Rule. Rule 23.3 states that "[i]n all cases with class action allegations, . . . [n]o motion *to certify a class* shall be filed before the Rule 26(f) conference except by agreement of the parties or order of the Court." S.D.

Ohio Civ. R. 23.3 (emphasis added). Plaintiff's motion for conditional certification pertains only to her *collective action allegations* and not her Rule 23 class claims. The Rule's provision against filing motions for *class certification* does not apply to Plaintiff's motion for conditional certification of a *collective action*.

While the Court would prefer to rule on the motion only after fully considering any of Defendant's potential objections to it, the Court nevertheless proceeds to rule on it now for several reasons. First, conditional certification triggers the issuance of notices to potential opt-in plaintiffs, on whose claims the statute of limitations continues to run until opting in. Ruling on the motion now, without allowing time for additional briefing, thus prevents prejudicing potential opt-in plaintiffs who have yet to receive notice of this action. Second, conditional certification is routinely granted before any discovery takes place. Finally, Defendants may move to decertify the class at the close of discovery.

The Court finds that Plaintiff has carried her burden of setting forth a "modest factual showing that [she] is similarly situated to the other employees [she] is seeking to notify." *Waggoner*, 110 F. Supp. 3d at 764 (internal quotation marks omitted). Specifically, Plaintiff alleges in her Complaint that Defendants permitted their domestic service employees to work more than forty hours per workweek but did not compensate them at a rate of one and one-half times their normal rate of pay for all hours worked in excess of forty in one week, Compl. ¶ 27, ECF No. 1. Plaintiff also submits an affidavit in which she states that she typically worked around sixty-five to one hundred hours per week, that her

regular pay rate was around $10.50 to $11.50 per hour, and that she was not paid overtime compensation for hours worked in excess of forty in a workweek. Brittmon Aff. ¶¶ 3–5, ECF No. 41-1. Additionally, Plaintiff asserts that her experiences as a Support Specialist are similar to Defendants' other employees who work as "support professionals, support associates, caregivers, home health aides, or other employees who provided companionship services, home care, and/or other in-home services . . . ." *Id.* ¶ 2. These allegations demonstrate sufficient similarity between the domestic services employees included in Plaintiff's proposed class to meet the "fairly lenient standard" for conditional certification. *Green*, 2015 WL 6454856, at *3 (stating that classes may be certified "under situations where a uniform corporate policy applied to similar, but not identical, types of employees").

## 2. Plaintiff's Proposed Notice to Potential Opt-In Plaintiffs

The Court has reviewed Plaintiff's proposed notice to potential opt-in plaintiffs and concludes that it is "timely, accurate, and informative." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989).

Plaintiff seeks to transmit notice to potential opt-in plaintiffs via regular mail, email, and mobile phone text message. "Courts generally approve only a single method for notification unless there is a reason to believe that method is ineffective." *Wolfram v. PHH Corp.*, No. 1:12-cv-599, 2012 WL 6676778, at *4 (S.D. Ohio Dec. 21, 2012). "Nevertheless, a growing number of courts have authorized dual notification as to former employees only, recognizing that

employers may not have current residential addresses for them." *Williams v. King Bee Delivery, LLC*, No. 5:15-cv-306-JMH, 2017 WL 987452, at *7 (E.D. Ky. Mar. 14, 2017). Allowing dual notice "advances the remedial purpose of the FLSA, because service of the notice by two separate methods increases the likelihood that all potential opt-in plaintiffs will receive notice of the lawsuit, and of their opportunity to participate." *Id.*; *see also Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-cv-253, 2015 WL 853234, at *4 (S.D. Ohio Feb. 26, 2015) *(*"Within the Southern District of Ohio, several judges have found notification by U.S. mail to be sufficient for all *current* employees in FLSA collective actions, but ordered additional email notification for *former* employees in order to better ensure delivery.").

In consideration of the remedial purpose of the FLSA and the likelihood that the addresses of former employees in Defendants' database are outdated, the Court permits Plaintiff's proposed notice to be sent via postal mail for all current employees and via both postal and electronic mail for all former employees. Plaintiff may not, however, notify any potential opt-in plaintiff of the lawsuit by text message unless Plaintiff can show that notice by postal and electronic mail is insufficient as to any given potential opt-in plaintiff—in other words, that postal and electronic notices to a particular individual were returned as undeliverable. *See Wolfram v. PHH Corp.*, No. 1:12-cv-599, 2012 WL 6676778, at *4 (S.D. Ohio Dec. 21, 2012); *see also Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2017 WL 3500411, at **4–5 (S.D. Ohio

Aug. 15, 2017) (approving notice by postal and electronic mail but not by text message unless the plaintiffs could "show that notice via postal and electronic mail [was] insufficient as to a given potential member").

The Court likewise denies Plaintiff's request to send postal mail, email, and text message reminder notices forty-five days after the first notice is sent. Plaintiff's only argument in support of issuing reminder notices is that "[c]ourts regularly authorize reminder notices to increase the chance that workers will be informed of their rights." Mot. 20, ECF No. 4 (citing cases outside the Sixth Circuit). This Court, however, has regularly denied such requests, particularly when it approves dual notice to former employees in the first instance. *See, e.g.*, *Ganci v. MBF Inspection Services, Inc.*, No. 2:15-cv-2959, 2016 WL 5104891, at *2 (S.D. Ohio Sept. 20, 2016) (Frost, J.) (citing cases). Plaintiff's request to send reminder notices in this case is likewise denied.

Finally, the Court grants Plaintiff's request that the opt-in period last ninety days. *See id.* ("There is no hard and fast rule controlling the length of FLSA notice periods. Courts in this district have frequently used their discretion to grant ninety-day opt-in periods." (citing cases)).

## V. PLAINTIFF'S MOTION TO TOLL THE STATUTE OF LIMITATIONS

Finally, Plaintiff moves to toll the statute of limitations for all potential opt-in plaintiffs.

FLSA claims for unpaid compensation must generally be filed within two years after the cause of action accrues. 29 U.S.C. § 225(a). If the violation of

the FLSA was willful, however, the statute of limitations extends to three years beyond the date the action accrues. *Id.* "When a plaintiff alleges a violation of the FLSA based on a failure to pay overtime wages, each paycheck that fails to include wages for overtime constitutes a separate violation. Thus, a new cause of action accrues with the receipt of each paycheck." *Viciedo v. New Horizons Computer Learning Ctr. of Columbus, Ltd.*, 246 F. Supp. 2d 886, 902 (S.D. Ohio 2003) (citing *Archer v. Sullivan Cty.*, 129 F.3d 1263, 1997 WL 720406, at *2 (6th Cir.1997)).

Unlike Rule 23 class actions, the filing of an FLSA complaint does not toll the statute of limitations. Instead, the statute of limitations continues to run on each plaintiff's claim until the plaintiff files his or her consent to opt in to the action. 29 U.S.C. § 256. The FLSA therefore allows "some time [to] lapse between the commencement of collective actions and the date that each opt-in plaintiff files his or her consent form." *Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1076 (S.D. Ohio 2016) (citation omitted).

Notwithstanding the delay contemplated by statute, the doctrine of equitable tolling, which is read into every statute, allows "a court to extend the statute of limitations on a case-by-case basis to prevent inequity." *Id.* (citation omitted). Whether to invoke equitable tolling in a particular case is within the sound discretion of the trial court. *Id.*

The Sixth Circuit has identified five factors to guide the court's determination of the appropriateness of equitable tolling. *Truitt v. Cty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998). Those factors are:

> 1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement.

*Id.* (citation omitted). "The propriety of equitable tolling must necessarily be determined on a case-by-case basis." *Id.* (citation omitted). Equitable tolling "should be granted only sparingly" and typically when an opposing party has "engaged in . . . misrepresentations or other wrongdoing . . . ." *Amini v. Oberlin College*, 259 F. 3d 493, 500 (6th Cir. 2001) (citations omitted).

Most District Judges in this circuit have concluded that it is improper to equitably toll the claims of potential opt-in plaintiffs who are not yet before the court. *See Heibel v. U.S. Bank Nat. Ass'n*, No. 2:11-cv-00593, 2012 WL 4463771, at *7 (S.D. Ohio Sept. 27, 2012) (finding a decision on equitable tolling prior to issuing notice to potential opt-in plaintiffs to be "premature"); *Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-cv-253, 2015 WL 853234, at *8 (S.D. Ohio Feb. 26, 2015) ("[T]he named plaintiffs have no authority to move to equitably toll the claims of the potential opt-in plaintiffs."); *Feustel v. CareerStaff Unlimited, Inc.*, No. 1:14-cv-264, 2015 WL 13022173, at *2 (S.D. Ohio Mar. 26, 2015) (Barrett, J.) (concluding that a decision whether equitable tolling applied was premature when "opt-in plaintiffs [had] not yet been identified" and it was "unclear

whether tolling [would] impact the claims of any opt-in plaintiff"); *Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1077–78 (S.D. Ohio 2016) (Smith, J.) (holding that, until potential plaintiffs opt in to an FLSA action, a decision as to the equitable tolling of their claims is inappropriate, because "they are not properly before the Court"); *Lemmon v. Harry & David Operations, Inc.*, No. 2:15-cv-779, 2016 WL 234854, at *8 (S.D. Ohio Jan. 20, 2016) (Smith, J.) ("[T]he doctrine of equitable tolling is an individualized inquiry, inappropriate for group consideration in the context of an FLSA collective action." (citation omitted)); *Richert v. LaBelle HomeHealth Care Serv. LLC*, No. 2:16-cv-437, 2017 WL 4349084, at **6–7 (S.D. Ohio Sept. 29, 2017) (Graham, J.) (finding that it would be "premature to grant blanket equitable tolling for plaintiffs who are currently hypothetical and have not yet come before this court" (quoting *In re Amazon.com, Inc., Fulfillment Ctr. Fair Labor Standards Act (FLSA) & Wage & Hour Litig.*, No. 14-MD-02504, 2014 WL 3695750, at *3 (W.D. Ky. July 24, 2014)). *But see Baden–Winterwood,* 484 F. Supp. 2d at 826; *Struck v. PNC Bank N.A.,* 931 F. Supp. 2d 842, 846–48 (S.D. Ohio 2013); *Engel v. Burlington Coat Factory Direct Corp.,* No. 1:11–cv–759, 2013 WL 5177184, at *2 (S.D. Ohio Sept.12, 2013) (applying equitable tolling prior to conditional certification on the reasoning that the potential opt-in plaintiffs had no actual or constructive notice of the filing requirement).

The Undersigned agrees with the vast majority of cases in this circuit that have declined to apply equitable tolling at this stage of the litigation. Applying

equitable tolling to the claims of unknown plaintiffs not yet before this Court contravenes the fact-specific, case-by-case determination that specific circumstances justify the tolling of an individual plaintiff's claims. That is, without having information about the potential plaintiffs whose claims the Court is being asked to toll, the Court is unable to determine whether those potential plaintiffs lacked actual or constructive notice of the filing requirement, diligently pursued their rights, or were reasonably ignorant of the legal requirements of their claims. As *Atkinson* put it, "[a]pplication of the[ *Truitt*] five factors to a group of potential opt-in plaintiffs, who have not yet received notice of the collective action and are not yet parties to the lawsuit, [would be] convoluted at best." *Atkinson*, 2015 WL 853234, at *9.

Accordingly, Plaintiff's premature Motion to Toll the Statute of Limitations is **DENIED** without prejudice.

## VI.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss, ECF No. 6, **DENIES** Plaintiff's Motion for Leave to File a Sur-Reply, ECF No. 12, **DENIES** Plaintiff's Motion to Toll the Statute of Limitations, ECF No. 14, and **GRANTS in part and DENIES in part** Plaintiff's Motion for Conditional Certification and Court-Supervised Notice, ECF No. 4.

The Court conditionally certifies the following class of opt-in plaintiffs:

> All current and former employees of Defendants who have worked as direct support professionals, support associates, caregivers, home health aides, or other employees who provided

companionship services, domestic services, home care, and/or other in-home services, and who worked over 40 hours in any workweek beginning January 1, 2015 through October 13, 2015, and were not paid time and a half for the hours they worked over 40.

Additionally, the Court **ORDERS** Defendants to produce, within **14 days** from the date of this Opinion and Order, a list in electronic and importable format of the names, addresses, and e-mail addresses of all potential opt-in plaintiffs who worked for Defendants at any time from January 1, 2015, until and including October 13, 2015. All potential opt-in plaintiffs shall be provided ninety (90) days from the date of mailing the notice and opt-in consent forms to opt in to this lawsuit.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**